IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| STEPHANIE WEEKS, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | PE:21-CV-00066-DC-DF |
| | § | |
| BOTTLING GROUP LLC *d/b/a* PEPSI | § | |
| BEVERAGES COMPANY, NEW BERN | § | |
| TRANSPORT CORPORATION, and | § | |
| PEPSICO, INC. | § | |
| *Defendants*. | § | |

## AMENDED[1] REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendant PepsiCo, Inc.'s ("PepsiCo") Motion to Dismiss

Plaintiff's First Amended Complaint Pursuant to Rule 12(B)(6) (hereafter, "Motion to Dismiss").

(Doc. 13). This matter is before the undersigned United States Magistrate Judge through a standing

order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the

Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned

**RECOMMENDS** that PepsiCo's Motion to Dismiss be **GRANTED**. (Doc. 13).

### I. BACKGROUND

This case's genesis is a workplace termination. On December 8, 2021, Plaintiff Stephanie

Weeks ("Plaintiff") filed an Original Petition against Defendant Pepsi Beverages Company under

Cause No. P-8388-83-CV, *Stephanie Weeks v. Pepsi Beverages Company*, in the 83rd District Court

of Pecos County, Texas. (Doc. 1-3). On December 22, 2021, Bottling Group, LLC d/b/a Pepsi

Beverages Company ("PBC") filed its Notice of Removal (hereafter, "Notice of Removal") with this

---

1. This Amended Report and Recommendation corrects some typographical errors in the undersigned's earlier
Report and Recommendation. (Doc. 23). Per 28 U.S.C. § 636(b), the parties' deadline to respond to this Amended
Report and Recommendation is fourteen (14) days after the entry and service of this Amended Report and
Recommendation.

Court, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1 at 2–3). Plaintiff moved to amend her complaint and join as Defendants New Bern Transport Corporation ("New Bern") and PepsiCo (collectively, "Defendants") on December 8, which the Court granted. (Doc. 10). Plaintiff's live First Amended Complaint asserts a claim against all Defendants for gender discrimination and retaliation under §§ 21.001–21.556 of the Texas Labor Code. (Doc. 11 at 2, 8–9).

Plaintiff alleges that she was hired by PBC and New Bern in October 2019 as a sales representative, and was the "only female sales representative through her entire time with the company." *Id.* at 3. Plaintiff asserts that her supervisor, Pascal "PK" Reyes ("Reyes"), "did not want to work with Plaintiff because she was a woman," and that Reyes was to "give her sales route to a man named Benji Ary[] instead." *Id.* Reyes allegedly refused to train Plaintiff as would be vital for her route or teach Plaintiff how to operate the tablets for performing her job, but provided these services for "each of the male sales representatives." *Id.* at 3–4. Reyes purportedly would not respond to Plaintiff and would only communicate with male employees about products eligible for sales. *Id.* at 4. Plaintiff further asserts Reyes laughed at sexist remarks made by her other male coworkers and blamed Plaintiff for male coworkers' mistakes with merchandisers. *Id.* at 4–6.

Plaintiff claims that on November 12, 2019, she complained to Brittany Walker ("Walker"), New Bern's Human Resources Manager, about Reyes creating a "hostile work environment," which did nothing to address the issue. *Id.* at 6. Plaintiff purportedly eventually made a complaint about Reyes's discrimination to PBC Regional Manager Rey Camacho, who exclaimed support for Plaintiff and assured her "there would be an investigation into her complaints." *Id.* On February 7, New Bern supposedly informed Plaintiff about Cexana, the store manager of a Presidio Dollar General, who complained that Plaintiff failed to perform spring cleaning and pick up a dozen packs from the store. *Id.* at 7–8. On February 11, Reyes allegedly suspended Plaintiff, and one week later, Reyes fired her without providing her any chance to "defend herself against Cexana's allegations." *Id.* at 8. Plaintiff claims Reyes told her that himself and "Walker were the decision makers for her termination." *Id.*

On December 22, 2021, PepsiCo filed the pending Motion to Dismiss, arguing that Plaintiff's Amended Complaint fails to allege that PepsiCo—as opposed to PBC or New Bern—employed Plaintiff, thereby precluding this employment discrimination action against PepsiCo. (Doc. 13). After missing the deadline to file a response to the Motion to Dismiss, the Court granted Plaintiff additional time to produce a response, citing the general judicial need for Plaintiff to fully present and defend her substantive case at this juncture. (Doc. 19). Plaintiff filed a "Response" on March 2, 2022, accompanied in the same document by a "Motion for Leave to File a Second Amended Complaint." (Doc. 21 at 1). PepsiCo produced a Reply on March 8, 2022, claiming that Plaintiff exploited the Court's generous granting of an extension of time to respond, and instead tried to use the opportunity to amend her Amended Complaint. (Doc. 22 at 2–3). Further, PepsiCo maintains that even if the proposed Second Amended Complaint became the live complaint, Plaintiff's case against PepsiCo would still fail to create an employment relationship between itself and Plaintiff sufficient to sustain this case. (Doc. 22). This matter is now ripe for disposition. The questions before the Court are therefore: (1) does Plaintiff allege sufficient facts to indicate PepsiCo acted as her employer through its subsidiary New Bern under the integrated enterprise theory? and (2) if not, does Plaintiff allege sufficient facts to implicate PepsiCo as her joint employer?

## II. LEGAL STANDARD

When a defendant files a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief. *See Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). The court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff." *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On the other hand, if the complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is appropriate. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). The court should dismiss a complaint if the court can only infer the mere possibility of misconduct, or if the plaintiff has only alleged that he is entitled to relief rather than stating a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

In its Motion to Dismiss, PepsiCo argues that dismissal of Plaintiff's gender discrimination and retaliation claims against it is proper under Federal Rule 12(b)(6) because the First Amended Complaint does not contain "any facts . . . show[ng] that PepsiCo was her employer—whether directly or jointly." (Doc. 13 at 2). PepsiCo asserts that New Bern, a purported subsidiary of PepsiCo, was instead Plaintiff's direct employer, and that Plaintiff fails to allege that PepsiCo itself was Plaintiff's employer. *Id.* at 4. PepsiCo cross-references the First Amended Complaint and the Original Petition in forming its opinion that, across either complaint, no employer-employee relationship can be inferred. *Id.* at 4–5.

### A.  *First Amended Complaint*

In the First Amended Complaint, Plaintiff asserts PepsiCo violated chapter 21 of the Texas Labor Code, and also by subjecting her to "gender discrimination and retaliation for opposing gender discrimination and participating in a complaint of gender discrimination." (Doc. 11 at 8–9). "The law governing the Texas Labor Code and Title VII[, 42 U.S.C. § 2000(e)(b),] for prima facie cases is the same." *See Caro v. City of Dallas*, No 3:15-CV-1210-L, 2016 U.S. Dist. LEXIS 7955, at *25 n.5, 2016 WL 397084, at *8 n.5 (N.D. Tex. Feb. 1, 2016) (citing *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011)); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d

4

629, 633 (Tex. 2012) (observing that because chapter 21 "is effectively identical to Title VII . . . we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the [discrimination statute]").

Employment discrimination under chapter 21 of the Texas Labor Code requires that plaintiff demonstrate "(1) [she] is a member of a protected group; (2) [she] was qualified for the job that was held; (3) [she] was discharged; and (4) after the employer discharged [her], the employer filled the position with a person who is not a member of a protected group." *Vann v. Mattress Firm, Inc.*, 626 F. App'x 522, 525 (5th Cir. 2015) (citing *Black*, 646 F.3d at 259); *see also Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 173 (Tex. App.—El Paso 2021, no pet.) (mem. op.). A claim for retaliatory discrimination under that same chapter necessitates assertions a plaintiff to show that "(1) [s]he engaged in a protected activity; (2) [s]he was subjected to an adverse employment action; and (3) a causal connection existed between [her] participation in the protected activity and the adverse employment action." *Hancock v. Securitas Sec. Servs. USA, Inc.*, No. SA-20-CV-00785-ESC, 2022 U.S. Dist. LEXIS 39328, at *35, 2022 WL 675821, at *11 (W.D. Tex. Mar. 4, 2022) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). For the purposes of analyzing a chapter 21 retaliation claim, "protected activity" refers to "(1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, or (4) testifying, assisting or participating in any manner in an investigation, proceeding, or hearing." *Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 342 (5th Cir. 2008).

PepsiCo only disputes the existence of a factual allegation which, if assumed to be true, would indicate an employer-employee relationship existed between PepsiCo and Plaintiff. (Doc. 13 at 6). To determine whether PepsiCo is Plaintiff's employer under Title VII and consequently chapter 21 of the Texas Labor Code, a two-step process is followed. *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993). First, the defendant must fall within Title VII's statutory definition of an employer; if so, the Court must ask "if there is 'an employment relationship between

5

the plaintiff and the defendant.'" *Dunlap v. Fort Worth Indep. Sch. Dist.*, No. 4:21-cv-00790-O-BP, 2021 U.S. Dist. LEXIS 250918, at *13, 2021 WL 6503710, at *5 (N.D. Tex. Dec. 15, 2021) (citing *Deal*, 5 F.3d at 118), *report and recommendation adopted*, No. 4:21-cv-00790-O-BP, 2022 U.S. Dist. LEXIS 8346, 2022 WL 160242 (N.D. Tex. Jan. 18, 2022). Under the Texas Labor Code, which defines "employer" in a substantially similar way to Title VII, an "employer" is a "person engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks," and includes agents of such persons. *See Mejia v. Ayala*, No. 3:21-CV-0587-D, 2021 U.S. Dist. LEXIS 166577, at *4, 2021 WL 3930090, at *2 (N.D. Tex. Sept. 2, 2021); *see also* Tex. Lab. Code. § 21.002(8). Precisely what constitutes an "employer" is subjected to a liberal construction. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983). Plaintiff alleges that PepsiCo was her employer under two separate but related theories: a parent-subsidiary single employer relationship between PepsiCo and New Bern, as well as a joint employer relationship between PepsiCo, New Bern, and PBC. (Doc. 11 at 3).

 In this case, it is uncontroverted that New Bern[2] was at least one of Plaintiff employer's in this case. (Docs. 11; 13 at 2). Furthermore, it is also uncontroverted and even conceded that New Bern is a subsidiary of PepsiCo. (*See* Doc. 13 at 5). Given this foundation, Plaintiff will have needed to allege such facts as would indicate that PepsiCo is a joint or single employer of Plaintiff along with New Bern. Beginning with the "single employer" or "integrated enterprise" doctrine, a form of piercing the corporate veil, a parent employer may be held liable for civil rights violations of the subsidiary where the "superficially distinct enterprises . . . represent a single, integrated enterprise: a single employer." *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir. 1997).

 In determining whether a parent corporation and its subsidiary constitute a single employer in Title VII and Texas Labor Code cases, a four-part test is used, which examines the "(1) interrelation

---

2. For the remainder of this analysis, where applicable, "New Bern" will refer to both New Bern and PBC, as Plaintiff's undisputed alleged employers. (Doc. 13 at 2).

of operations, (2) centralized control of operations, (3) common management, and (4) common ownership or financial control." *Goss v. Bureau Veritas N. Am., Inc.*, No. 4:21-CV-02574, 2022 U.S. Dist. LEXIS 25723, at *15–16, 2022 WL 444477, at *6 (S.D. Tex. Feb. 14, 2022) (citing *Schweitzer*, 104 F.3d at 763); *see also Perry v. VHS San Antonio, L.L.C.*, 990 F.3d 918, 927 (5th Cir. 2021). The second factor is of greatest importance, requiring the court to examine "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Goss*, 2022 U.S. Dist. LEXIS 25723, at *16, 2022 WL 444477, at *6 (alteration omitted) (citing *Tipton v. Northup Grumman Corp.*, 242 F. App'x 187, 190 (5th Cir. 2007).[3]

This case therefore presents an initial question of whether PepsiCo and New Bern are integrated enterprises for the purposes of evaluating the factual sufficiency of Plaintiff's claim against PepsiCo—the undersigned concludes that they are not. *See Lozada-Leoni v. MoneyGram Int'l*, No. 4:20CV-68-RWS-CMC, 2020 U.S. Dist. LEXIS 224068, at *62–63, 2020 WL 7000874, at *21–22 (E.D. Tex. Oct. 19, 2020). As to the first factor, the undersigned is not persuaded that PepsiCo and New Bern's operations are significantly interrelated. Plaintiff in conclusory fashion states that "New Bern is a subsidiary of PepsiCo." (Doc. 11 at 2, 3). Plaintiff needed to propound enough facts to persuade the Court that PepsiCo is more involved in New Bern than it would ordinarily seem. *See Sullivan v. Schlumberger Ltd.*, No. 4:20-CV-00662, 2022 U.S. Dist. LEXIS 33725, at *12–13, 2022 WL 584038, at *4 (E.D. Tex. Feb. 25, 2022). In this regard, Plaintiff has certainly failed.

---

3. It is well-established that "[t]he doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary employees." *Tipton v. Northup Grumman Corp.*, 242 F. App'x 187, 189 (5th Cir. 2007). For a plaintiff to rebut this presumption, must be sufficient evidence of "control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). "This analysis ultimately focuses on . . . whether the parent corporation was [in fact] the final decision-maker in connection with the employment matters underlying litigation." *Id.* at 777. This standard is only applied when a court considers evidence before it, such as when it addresses a pending motion for summary judgment; therefore, it is not appropriate here. *See Badii v. Rick's Cabaret Int'l Inc.*, No. 3:12-CV-4541-B, 2013 U.S. Dist. LEXIS 194838, at *12–13, 2013 WL 12124034, at *5 (N.D. Tex. June 16, 2013).

Elsewhere, the First Amended Complaint makes a tangential mention to "Pepsi" in its prefatory paragraphs, asserting that "Pepsi fired [Plaintiff] within six weeks of her complaint of gender discrimination" and that "[a] Pepsi supervisor heard [a sexist] comment and laughed." (Doc. 11 at 1). Even if these allegations alone would suffice to indicate a significant interrelation between "Pepsi" and New Bern, a second look at the allegation reveals an ambiguity. Nowhere does the First Amended Complaint indicate whether "Pepsi" refers to PBC—"Pepsi" Beverages Company—or PepsiCo; however, closer analysis of the First Amended Complaint as well as the Original Petition serves to disperse the nomenclature fog. As PepsiCo points out, the prefatory paragraph present in the First Amended Complaint is identical to that from Plaintiff's Original Petition filed in the underlying state matter and removed to this Court. (Doc. 1-3 at 2; *see also* Doc. 5 at 5 n.3). At the time the Original Petition was filed in state court, and even when it was removed to this Court, the only Defendant present named in the case was PBC, which also has "Pepsi" in its name. (Docs. 1, 1-3). Therefore, the undersigned can infer that Plaintiff's use of the moniker "Pepsi" in her prefatory paragraph refers to PBC, and *not* PepsiCo, the movant here.

Furthermore, the related assertion that a "Pepsi supervisor" heard and laughed at a comment that "[w]omen should just stay at home and not be at work" is detailed later in the First Amended Complaint. (Doc. 11 at 1). This comment was purportedly made by Ray Carrillo, a male driver for *New Bern*, and the supervisor who laughed was Reyes, who was another *New Bern* employee. Thus, the term "Pepsi," which stands as the only ostensibly conceivable connection to any form of involvement PepsiCo may have had with New Bern, does not at all concern PepsiCo but instead refers to PBC, another Defendant. Absent any allegation that PepsiCo wielded any authority over New Bern or was involved in New Bern's operations, the undersigned would find it difficult to conclude that PepsiCo and New Bern were integrated enterprises. Even if Reyes was indeed a supervisor for PepsiCo as well as for New Bern, this fact alone would not evince an atypical meddling in New Bern's operations by PepsiCo. *See Bass v. Technip USA Corp.*, No. H-05-0652,

2005 U.S. Dist. LEXIS 48609, at *14, 2005 WL 1185626, at *4 (S.D. Tex. May 6, 2005) (discussing how a parent's use of a "few" of the subsidiary's employees does not indicate "excessive meddling by [the parent] in the daily operations of its subsidiary").

Concerning the most important factor, centralized control of employment decisions, as well as the remaining two factors, the First Amended Complaint likewise is devoid of any factual allegations as to PepsiCo's influence over New Bern's operations or administrative hierarchy. Plaintiff does not claim any ability by any employee of PepsiCo to have a dominating influence as to whether a New Bern employee such as Plaintiff should be terminated, nor her work schedule, route, or position within the company. There has been alleged no unusual aspects of common management and ownership which would signify an integrated enterprise between PepsiCo and New Bern, and consequently, no reason to pierce the veil provided by New Bern's undisputed status as a subsidiary. Were some overlaps involved, as noted above, the First Amended Complaint lacks any details or mere assertions that PepsiCo controlled New Bern in any way. *See Haskins v. Davis*, No. H-06-2422, 2007 U.S. Dist. LEXIS 107990, at *9–10, 2007 WL 9754438, at *4 (S.D. Tex. Nov. 7, 2007). In this case, however, Plaintiff has failed to provide even a conclusory allegation that PepsiCo and New Bern "share common ownership, have common financial control, operate under common management [or] share centralized control over their labor relations." *See Wilkens v. Toyotetsu Am., Inc.*, No. SA-09-CV-515-XR, 2010 U.S. Dist. LEXIS 87394, at *11–14, 2010 WL 3342229, at *4 (W.D. Tex. Aug. 25, 2010) (finding insufficient a conclusory recitation of the single employer factors for a Federal Rule 12(b)(6) motion). Attempting to infer such from the facts alleged proves futile. Therefore, PepsiCo cannot be maintained as a Defendant in this matter as a single employer through New Bern.

The allegations set forth in Plaintiff's First Amended Complaint are insufficient to convince the undersigned that PepsiCo, as New Bern's parent company, is the employer of New Bern's own employees. Therefore, the First Amended Complaint lacks adequate facts which, if true, would

indicate that PepsiCo was in such a position as her single employer through New Bern as to be able to discriminate or retaliate against her in contravention of the Texas Labor Code. Accordingly, as to Plaintiff's single employer claim, the undersigned **RECOMMENDS** that PepsiCo's Motion to Dismiss be **GRANTED**. (Doc. 13).

Another question is introduced by the Motion to Dismiss, that being whether PepsiCo is Plaintiff's joint employer along with New Bern. The undersigned holds that there is no constructive employer-employee relationship which may be inferred from the First Amended Complaint under the "joint employer" or "multiple employers" doctrine. This doctrine is often conflated with the aforementioned single employer doctrine, as they are related yet distinct, but each offers a different analytical framework, with a joint employer not requiring any hierarchical ownership of the direct employer. *See Lozada-Leoni v. MoneyGram Int'l*, No. 4:20CV-68-RWS-CMC, 2020 U.S. Dist. LEXIS 224068, at *63, 2020 WL 7000874, at *22 (E.D. Tex. Oct. 19, 2020). Absent the direct assertion of an employer-employee relationship between a plaintiff and a purported defendant-employer, Texas courts as well as the federal courts from which they seek guidance can infer such a relationship if the plaintiff has alleged that the defendant-employer "controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria," or "has the right to control and direct the work of the plaintiff, not only as to the result to be achieved, but also to the details by which that result is achieved." *Simmons v. Texas*, No. A-09-CV-785-LY, 2010 U.S. Dist. LEXIS 154233, at *4–5, 2010 WL 11601083, at *2 (W.D. Tex. Feb. 10, 2010) (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990)); *see also Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. 4:16-CV-01282, 2017 U.S. Dist. LEXIS 48059, at *18, 2017 WL 1177995, at *6 (S.D. Tex. Mar. 30, 2017).

In this case, all allegations concerning discrimination and retaliation are based upon actions taken by Walker, Reyes, and Plaintiff's direct coworkers, all of whom are employees of New Bern and PBC. (*See generally* Doc. 11). There are no allegations that these employees are co-employed

10

with PepsiCo or acted under PepsiCo's direction. Further, the First Amended Complaint is devoid of any assertion that PepsiCo controlled Plaintiff's employment, promotion, or route opportunities, or otherwise was able to control New Bern or PBC's decision-making in which Plaintiff was employed and on which routes. *See generally id.* Therefore, the First Amended Complaint lacks adequate facts which, if true, would indicate that PepsiCo was Plaintiff's joint employer with New Bern, able to discriminate or retaliate against her. Accordingly, as to Plaintiff's joint employer claim, the undersigned **RECOMMENDS** that PepsiCo's Motion to Dismiss be **GRANTED**. (Doc. 13).

In conclusion, the undersigned finds that Plaintiff's First Amended Complaint does not present enough factual assertions to support the existence of either a single, integrated entity, or a joint employer relationship, between New Bern and PepsiCo. It is also undisputed that PepsiCo did not directly and solely employ Plaintiff. *See Badii v. Rick's Cabaret Int'l Inc.*, No. 3:12-CV-4541-B, 2013 U.S. Dist. LEXIS 194838, at *15–16, 2013 WL 12124034, at *6 (N.D. Tex. June 16, 2013) (noting that if "no single, integrated entity exists, Plaintiff must allege an actual employment relationship"). Thus, Plaintiff has failed to allege a plausible claim for discrimination or retaliation under the Texas Labor Code upon which relief can be granted against PepsiCo. Accordingly, the undersigned **RECOMMENDS** that PepsiCo's Motion to Dismiss be **GRANTED** in its entirety. (Doc. 13).

### B.  *Proposed Second Amended Complaint*

#### a.  *Propriety of Plaintiff's "Response"*

In the above analysis, the undersigned considered the allegations set forth in the First Amended Complaint and the arguments presented in PepsiCo's Motion to Dismiss as well as its Reply. (Docs. 11, 13, 22). Yet, Plaintiff proposes the Court allow leave for a second time to amend her complaint and "moot and put to rest any concerns" in the Motion to Dismiss. (Doc. 21 at 2).

On January 13, Plaintiff filed an Opposed Motion to Extend the Deadline to Respond to the Defendant PepsiCo's Motion to Dismiss (hereafter, "Motion to Extend"), which was due by January

5, 2022, under the Local Rules. (*See* Docs. 14, 19); *see also* Local Rule CV-7(d). PepsiCo opposed

the Motion to Extend. (Doc. 16). On February 23, 2022, the Court granted Plaintiff's Motion to

Extend notwithstanding PepsiCo's opposition, allowing Plaintiff until March 2, 2022, to submit a

response to the Motion to Extend. (Doc. 19). On March 2, 2022, Plaintiff filed her "Response,"

which objectively lacks any analysis or receptive language concerning the instant Motion to Dismiss.

(Doc. 21).

In lieu of an actual response to any of the substantive arguments presented in the Motion to

Dismiss, Plaintiff provides a Motion for Leave to File a Second Amended Complaint (hereafter,

"Motion for Leave"). *Id.* Thus, the "Response" is no response at all, and is in fact a motion for leave

to amend the First Amended Complaint. Plaintiff has squandered her opportunity, generously granted

by the Court, to respond to the Motion to Dismiss. The Court has expended judicial resources in

evaluating and considering the Motion to Extend; the leave to amend should be denied on this ground

alone. Plaintiff filing as her "Response" the Motion for Leave is therefore improper and a waste of

the Court's time, and stands as another ground to deny her leave to amend.[4]

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Leave, if

construed as a properly submitted motion, be **DENIED**. (Doc. 21).

> *b.  Second Amended Complaint*

Even if the Court were to consider Plaintiff's improperly submitted Motion for Leave, the

undersigned would still conclude that Plaintiff's allegations for employment discrimination under

chapter 21 of the Texas Labor Code are insufficient.[5] *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368,

---

4. Ordinarily, at the Federal Rule 12(b)(6) stage, Plaintiff would be able to amend her complaint without seeking leave of the Court. However, the Court in October of 2021 entered a Scheduling Order setting a December 8, 2021, deadline for Plaintiff to further amend her complaint. (Doc. 8 at 1). Thus, by February of 2022, Plaintiff's only option was to seek leave from the Court to accomplish this amendment. Precisely why Plaintiff did not seek this separately instead of exhausting judicial resources evaluating her Motion to Extend concerning a response to the Motion to Dismiss is beyond practical comprehension.
5. The causes of action and theories of employment (i.e., the integrated enterprise and joint employment doctrines) in the proposed Second Amended Complaint concerning PepsiCo are identical to those asserted in the live First Amended Complaint. (Docs. 11, 21-1).

379 (5th Cir. 2014) ("[A]n amended complaint is futile if it fails to state a claim upon which relief may be granted."). Therefore, and in any event, the undersigned **RECOMMENDS** that Plaintiff's Motion for Leave be **DENIED AS MOOT**. (Doc. 21).

As a preliminary matter, the allegations in the prefatory paragraph of the proposed Second Amended Complaint remain unchanged. "Pepsi" therefore still evidently refers to PBC,[6] and not the instant movant PepsiCo. (Doc. 21-1 at 1). Additionally, Plaintiff does not alter her assertions that New Bern is a subsidiary of PepsiCo. *Id.* at 2, 3, 8.

Plaintiff's most substantive changes in her proposed Second Amended Complaint concern four sets of statements. Concerning the first assertion, Plaintiff notes that the purported handbook informed Plaintiff that "she was subject to and bound by 'PepsiCo-wide policies, including, but not limited to, the PepsiCo Code of Conduct [and] Equal Employment Opportunity Policy.'" *Id.* at 8. Plaintiff's second factual contention in the proposed Second Amended Complaint is that "PepsiCo policy dictated the plaintiff's pay and benefits, appearance, workplace conduct, general rules of conduct, leave, safety policies, confidential information and intellectual property, discipline including termination, and the appeal of any disciplinary action or termination." *Id.* at 8–9.

The third additional factual allegation Plaintiff provides is that "PepsiCo maintains the Plaintiff's personnel records, which feature PepsiCo's letterhead. Plaintiff's personnel form with PepsiCo instructed her to contact PepsiCo's [Human Resources] Service Center if she needed any information. PepsiCo assigned the plaintiff a 'Global Personal ID' number upon her hire." *Id.* Plaintiff's last newly proffered factual assertion is that Walker, who is purportedly also PepsiCo's human resources manager, "affirmed PepsiCo's termination of [her] employment." *Id.* at 9.

---

6. PepsiCo is correct in its observation that even the proposed Second Amended Complaint omits PepsiCo as a party in the "Parties" section of the pleading. (Docs. 22 at 4; 21-1 at 2). In the interests of thoroughness, however, the undersigned will treat this discrepancy as harmful to Plaintiff's case, but not wholly dispositive.

The undersigned finds that these additional facts are inadequate to satisfy the integrated enterprise doctrine test. Plaintiff's assertion that, when she was hired, she was bound to a PepsiCo handbook also PepsiCo's policies is perhaps the strongest fact in support of her case. Nevertheless, it is not enough. That PepsiCo may have provided general policies for the conduct of New Bern's employees is not substantially different from the ability to select the subsidiary's board of directors, the latter of which has been found to be an expected entitlement of a parent's investment in its subsidiary. *See Reuter v. XTO Energy, Inc.*, No. 4:20-cv-01474, 2022 U.S. Dist. LEXIS 45402, at *10, 2022 WL 784474, at *3 (S.D. Tex. Mar. 15, 2022) (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)) ("A parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and *set general policies* . . . .") (emphasis added). Thus, the assertion of a shared employees' conduct policy book does "not alone justify treating [PepsiCo] and its subsidiary [New Bern] as a single employer." *Bass v. Technip USA Corp.*, No. H-05-0652, 2005 U.S. Dist. LEXIS 48609, at *14, 2005 WL 1185626, at *4 (S.D. Tex. May 6, 2005). The existence of a mere PepsiCo handbook, furthermore, does not evidence an interrelation of operations sufficient to indicate an integrated enterprise between the two companies.

The second factor, focusing on the centralized control of New Bern's operations, is by far and markedly so the most important, and here, weighs against Plaintiff. Plaintiff's updated vague assertions that PepsiCo's policy "dictated" various aspects of Plaintiff's employment, including termination appeals and general discipline, are equally unpersuasive. (Doc. 21-1 at 8–9). Likewise, the allegations that PepsiCo maintains Plaintiff's personnel records and that PepsiCo assigned to her a personnel ID fall short of allowing the undersigned to infer that control of New Bern lies with PepsiCo. It has not been asserted that New Bern does not possess the personnel records of its employees, or that PepsiCo maintains exclusive control over the records. Further, from a practical perspective, it is difficult to see how an organization would keep track of its subsidiary's or even its

own personnel without assigning some kind of personnel ID to each employee. Indeed, if PepsiCo's policies were followed by New Bern, these general operation policies are insufficient for the undersigned to find that the PepsiCo's corporate veil should be pierced. *See Joaquin v. Coliseum Inc.*, No. A-15-CV-787-LY, 2016 U.S. Dist. LEXIS 91265, at *19, 2016 WL 3906820, at *6 (W.D. Tex. July 13, 2016), *report and recommendation adopted*, No. A-15-CV-787-LY, 2016 U.S. Dist. LEXIS 181550, 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016).

Lastly, Plaintiff has only alleged that Walker is, at best, a shared human resources manager between the two companies. (Docs. 11 at 6; 21-1 at 9). This single shared employee, along with a handbook of general policies and a database of personnel information, certainly cannot cast upon New Bern a PepsiCo-branded shadow, enshrouding it in a cherry-flavored mist. Even if Walker did affirm the decision to terminate Plaintiff's employment, Plaintiff does not assert that she made any appeal of her termination to PepsiCo at the outset. (Doc. 21-1). It thus can only be inferred that Walker's alleged affirmance came from her position at New Bern. The proposed Second Amended Complaint does not suggest that PepsiCo otherwise made the hiring decision, terminated Plaintiff, or significantly departed from the ordinary guidance-giving relationship between PepsiCo and its undisputed subsidiary New Bern. Plaintiff therefore has not alleged facts which would signify an integrated enterprise between PepsiCo and New Bern.

Additionally, the undersigned holds that the joint employer framework yields no better for the proposed Second Amended Complaint as reformed. The only fact buttressing the joint employer proposition is that Walker affirmed Plaintiff's termination. However, the proposed Second Amended Complaint evidently includes contradictory information—Walker, as Plaintiff asserts, is the human resources manager for both New Bern, as well as PepsiCo. *Id.* at 6, 9. While it presumably is not impossible for Walker to be the human resources manager for both New Bern and PepsiCo, even if she were, the sharing of employees between her undisputed employer and PepsiCo would not be sufficient to indicate that PepsiCo itself employed her. *See Haskins v. Davis*, No. H-06-2422, 2007

15

U.S. Dist. LEXIS 107990, at *6, 2007 WL 9754438, at *3 (S.D. Tex. Nov. 7, 2007) (finding ordinary in a parent-subsidiary relationship the "existence of common management and common ownership") (citing *Lusk*, 129 F.3d at 778). Therefore, the proposed Second Amended Complaint is inadequate to sustain Plaintiff's claims against PepsiCo under a joint employer theory.

Plaintiff's Motion for Leave is improperly submitted. Therefore, the undersigned **RECOMMENDS** that Plaintiff's Motion for Leave be **DENIED**. (Doc. 21). In the event that the Court would ordinarily be inclined to consider granting Plaintiff leave to amend her complaint for a second time, the Second Amended Complaint fails to state a discrimination or retaliation claim under the Texas Labor Code upon which relief can be granted against PepsiCo. Because the discrepancies remaining in the proposed Second Amended Complaint are fatal to Plaintiff's claims against PepsiCo a, the undersigned **RECOMMENDS** that the Motion for Leave be **DENIED AS MOOT**. (Doc. 21).

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that PepsiCo's Motion to Dismiss be **GRANTED**. (Doc. 13).

Further, the undersigned **RECOMMENDS** that Defendant PepsiCo be **DISMISSED WITHOUT PREJUDICE** from this action.

Further, the undersigned **RECOMMENDS** that Plaintiff's Motion for Leave be **DENIED** outright. (Doc. 21).

Lastly, the undersigned **RECOMMENDS** that, in the event that the Court would ordinarily be inclined to consider granting Plaintiff leave to amend her complaint for a second time, because the discrepancies in the proposed Second Amended Complaint still ring fatal to Plaintiff's claims against

16

PepsiCo, the undersigned **RECOMMENDS** that Plaintiff's Motion for Leave be **DENIED AS MOOT**. (Doc. 21).

SIGNED this 13th day of May, 2022.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Amended Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Amended Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

17